IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ERIC SENGA, | ) |
| | ) No. 07-1694-HU |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) FINDINGS AND |
| FEDEX FREIGHT WEST, INC., | ) RECOMMENDATION |
| a California corporation, | ) |
| | ) |
| Defendant. | ) |

Daniel Snyder
Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
    Attorney for plaintiff

Paula Barran
Amy Angel
Barran Liebman
601 S.W. Second Avenue, Suite 2300
Portland, Oregon 97204
    Attorneys for defendant

HUBEL, Magistrate Judge:

This is an action by Eric Senga against his employer, FedEx Freight West (FedEx) for a single claim of retaliation in violation of Or. Rev. Stat. § 659A.030 and 42 U.S.C. § 2000e-3(a). Senga seeks damages and equitable relief, including compensatory damages,

Findings and Recommendation Page 1

back pay, and front pay. Senga alleges that after he complained to FedEx about race discrimination, it retaliated against him by denying him promotions for which he was qualified, and by taking other actions. FedEx moves for partial summary judgment on some of the allegations and claims. Senga has conceded two: his claim that he should have been awarded a position as the Service Center Manager (SCM) of the Sacramento facility, and his claim that he should have been awarded a position as a Special Projects Manager. The remaining claims and allegations against which FedEx moves are: 1) the allegation that Senga's email was placed under surveillance by FedEx; 2) Senga's allegation that he was counseled for sleeping in a regional meeting, when in fact he was not sleeping; 3) the claim that Senga should have been promoted to a position as the SCM of the Portland facility; and 4) Senga's claim for front pay.

**Factual Background**

FedEx operates service centers of varying sizes which function as transportation hubs where inbound freight is sorted, reloaded, and sent on for further transport and delivery. Management positions in service centers include the SCM, Assistant SCM (for service centers of a certain size or volume), Operations Managers, and other management and supervisory positions reporting to Operations Managers. A normal promotional path is from Operations Manager to Assistant SCM in a large facility, or Operations Manager to SCM in a smaller facility, but this is not a rigid policy.

Eric Senga is of African descent. He is an Operations Manager at the Portland facility. Operations Manager is the most senior

Findings and Recommendation Page 2

position Senga has held with FedEx, and he continues in that position.

In late 2005, Senga learned that a position as Assistant SCM at the Phoenix service center was available. Although Senga had previously said he was not interested in moving to Phoenix, he applied and was interviewed for the position. Scott DePoto, another Portland Operations Manager who also applied for the position, was hired. Senga admits that he was not better qualified than DePoto, but he believed he and DePoto were equivalent in their qualifications. Upon learning that DePoto had been selected, Senga sent an email dated December 16, 2005, to the Phoenix SCM, Brad Housner, and an HR manager, complaining of race discrimination. Barran Declaration, Exhibit A (Senga dep.), Exhibit 4 (email). Senga's email describes the "whole job application process" as "despicable," claims he was subjected to a "mock interview" and made a fool of, and states that "none of you are to be trusted especially since you all thought the black man was too stupid to figure this out. In this case Sambo was a lot smarter then [sic] he was given credit for." Id. The email concluded,

> I deserved much better and you should have been man enough to tell me when this was a foregone conclusion. I would not have treated an animal the way you people treated me, but I guess I am just the black man who is supposed to go sit in the corner and not say anything. Dead wrong. I wish you a good life. No need to respond.

Id.

Before December 16, 2005, Senga had never made a complaint of race discrimination, although he expressed displeasure over the filling of positions in Las Vegas and Seattle. Senga had a

Findings and Recommendation Page 3

conversation with Daren van Wagenen, who was at that time Managing Director for the North Region of FedEx, to express his displeasure about FedEx's having chosen Mike Arvai to be SCM in Seattle, but did not mention race.

Senga's personal belief is that DePoto asked van Wagenen to step in and make sure DePoto was given the Phoenix position. When van Wagenen was asked by the Phoenix decisionmakers who he thought was the better candidate, as between Senga and DePoto, van Wagenen responded that he did not think they could go wrong with either candidate, though DePoto might be a better team builder. Senga believes this statement by van Wagenen was in retaliation for challenging the hiring of Arvai as SCM in Seattle.

In August 2006, van Wagenen observed Senga at an annual regional conference in what appeared to him to be a posture of sleeping, and asked Senga's manager to speak to him about it. The manager did so, and Senga denied that he had been asleep. Senga was not disciplined by his manager. At oral argument, Senga conceded that being counseled for sleeping was not an adverse employment action that could support a claim of retaliation.

In November 2006, Mike Harris was hired to be the Portland SCM, a position Senga had also applied for. Harris had worked as an Operations Manager and also had five years of experience as Assistant SCM in Fontana, California. Senga acknowledges that he has no experience as an Assistant SCM, but believes he had equivalent qualifications because he had filled in for the SCM at the Portland facility on occasion. Senga concedes that he is not

Findings and Recommendation Page 4

Case 3:07-cv-01694-MO    Document 69    Filed 02/18/09    Page 5 of 16

better qualified than Harris.

Senga alleges that FedEx also retaliated against him by blocking his receipt of emails from his wife and another individual that contained the words, "EEOC," "BOLI," and "discrimination." During oral argument, the court held that it would recommend granting partial summary judgment on the claim that FedEx engaged in retaliation by blocking Senga's email messages, because the record before the court contained no evidence from which a reasonable juror could find that FedEx was responsible for Senga's not receiving certain emails. The recommendation does not preclude Senga from introducing additional evidence about this or other issues at trial. The trial judge can address that issue at the pretrial conference.

**Standards**

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." State of California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

Findings and Recommendation Page 5

Case 3:07-cv-01694-MO    Document 69    Filed 02/18/09    Page 5 of 16

better qualified than Harris.

Senga alleges that FedEx also retaliated against him by blocking his receipt of emails from his wife and another individual that contained the words, "EEOC," "BOLI," and "discrimination." During oral argument, the court held that it would recommend granting partial summary judgment on the claim that FedEx engaged in retaliation by blocking Senga's email messages, because the record before the court contained no evidence from which a reasonable juror could find that FedEx was responsible for Senga's not receiving certain emails. The recommendation does not preclude Senga from introducing additional evidence about this or other issues at trial. The trial judge can address that issue at the pretrial conference.

**Standards**

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." State of California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

Findings and Recommendation Page 5

574, 587 (1986).

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir. 2001). The court may not make credibility determinations or weigh the evidence. Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-55 (1990). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Ins. Co. of N. Am., 638 F.2d 136, 140 (9th Cir. 1981).

**Discussion**

I.   Motion for Partial Summary Judgment

  A.   Prima facie case

To establish a prima facie retaliation claim, a plaintiff is required to show (1) involvement in a protected activity; (2) an adverse employment action taken against the plaintiff; and (3) a causal link between the two. See, e.g., Little v. Windermere Relocation, Inc., 265 F.3d 903, 913 (9th Cir. 2001).

    1) Protected activity

For purposes of this motion, FedEx does not challenge this element of Senga's prima facie case, and treats the December 2005 email to the Phoenix SCM as protected activity.

///

Findings and Recommendation Page 6

2) Adverse employment action

In the context of a retaliation claim, an "adverse employment action" is an action that a reasonable employee would have found materially adverse, meaning action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Rwy. Co. v. White, 126 S.Ct. 2405, 2411 (2006); see also Ray, 217 F.3d at 1243 (employment action is adverse in retaliation claim if it is "reasonably likely to deter employees from engaging in protected activity.") Only "non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

3) Causal link

To establish causation, the employee must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for" the adverse employment action, and that, but for such protected activity, the employee would not have suffered the adverse employment action. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064-65 (9th Cir. 2002).

FedEx asserts that Senga's claim that he was retaliated against when he was not promoted to Portland SCM must fail because he has not demonstrated a causal link between this action and his complaint of discrimination. FedEx argues that Mike Harris, the successful candidate, had relevant management experience as an Assistant SCM that Senga lacked. Harris had held the position of

Findings and Recommendation Page 7

Assistant SCM for five years, while Senga's management experience had never gone beyond the Operations Manager level, except for occasional "fill-ins."

FedEx contends that Senga has acknowledged that he has no factual information to support his claim that Harris's promotion to the position he applied for was retaliatory, citing Senga's deposition testimony:

```
Q:   Can you tell me any facts that you have, any
     information that you have, that there was some
     reason to select Mike Harris for the Portland
     position, other than his experience level?
A:   Are you asking, other than my belief?
Q:   Yes.
A:   I have no other reasons than my belief.
```

Senga dep. 204:6-12. Senga also acknowledged that Harris "has the qualification of having been an assistant SCM, which I do not have." Id. at 24:22-25.

FedEx argues that employers are not required by law to choose a protected employee in a competition between equally qualified candidates, citing Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577-78 (1978)("[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.")

Senga counters that the causal link can be inferred because the "timing in this case is uncanny." Senga points out that he filed a second charge with the EEOC on September 22, 2006, and then amended the charge on November 3, 2006, Senga Declaration ¶¶ 94-96, Exhibit OO, and that these events were in close proximity to the November 10, 2006 interview for the Portland SCM position, and the

Findings and Recommendation Page 8

December 16, 2006 appointment of Mike Harris to that position. Senga asserts further that he has created a material issue of fact on this element because there is "genuine issue of material fact as to why Harris (an outsider to the Portland center) would have been chosen over Plaintiff who had worked at the Center for six years prior, and had covered in the absence of the SCM at the Portland Center." Plaintiff's Brief, p. 14.

In reply, FedEx acknowledges that timing is sufficient to raise an inference of retaliation at the prima facie stage, but that it has rebutted that inference by articulating non-retaliatory reasons for hiring Mike Harris.

### 4) Pretext

Once plaintiff makes such a prima facie showing, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was a pretext. Id. A plaintiff can establish pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Chuang v. University of California Davis Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000). Circumstantial evidence must be "specific" and "substantial" to create a genuine issue of material fact. Nilsson v. City of Mesa,

Findings and Recommendation Page 9

503 F.3d 947, 954 (9th Cir. 2007).

A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 10928 (9th Cir. 2001).

FedEx contends that Senga has not met his burden of showing pretext. FedEx has submitted a second declaration from Daren van Wagenen stating that throughout his tenure as Managing Director for the Northern Region, all of his promotions were of "outside" candidates, i.e., they resulted in an individual's being placed into a position at a different service center. Second Declaration of van Wagenen, ¶ 2. Van Wagenen then lists nine separate promotions of outsiders. Id. at ¶¶ 3-11. According to van Wagenen, such outside promotions are more advantageous because they allow multiple location experience.

Van Wagenen acknowledges that occasionally, an operations manager will fill in for a SCM where, as in Portland, the service center does not have an assistant manager. Id. at ¶ 14. However, according to van Wagenen, although such situations allow an operations manager to "stretch himself or herself and gain valuable skills," it is "not nearly as significant as the experience that is gained from actually holding the position of ... assistant service center manager... day in and day out," as Mike Harris did for five years. Id. at ¶¶ 14, 15. FedEx cites Surrell v. California Water Serv. Co., 518 F.3d 1097, 1107 (9th Cir. 2008)(successful

Findings and Recommendation Page 10

candidate's management experience distinguished her as most qualified candidate for managerial position).

FedEx argues that Senga has nothing more than his own subjective belief that he was as well qualified as Harris (he does not claim to be better qualified), by virtue of having covered for the SCM in Portland, and that this is not sufficient to enable him to survive summary judgment. Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996)(employee's subjective personal judgment of competence alone does not raise genuine issue of material fact); Blue v. Widnall, 152 F.3d 1149, 1152 (9th Cir. 1998)(the closer the qualifications of the candidates, the less weight the court should give to perceived differences in qualifications in deciding whether proffered explanation is pretextual; subjective personal judgments of qualifications do not raise genuine issues of material fact).

I conclude that the timing and a fairly consistent pattern of employment decisions by van Wagenen with a negative impact on Senga, including lowered ratings on performance reviews, the suggested counseling for sleeping, and the failure to hire Senga for the Portland position are sufficient to generate a question of fact on whether FedEx's proffered reasons for not hiring Senga are unworthy of belief. A jury could decide Senga came out on the losing end of FedEx's choices, or that FedEx was building a record against Senga, on the basis of a retaliatory motive. Because the jury might agree or disagree with any decision the court might make, the decision should be the factfinder's.

Findings and Recommendation Page 11

1   I recommend that the motion for partial summary judgment on
2 the failure to promote Senga to the Portland SCM position be
3 denied.

4   B.   Front pay

5   FedEx moves against Senga's claim for front pay on the ground
6 that front pay is a remedy used as an alternative to reinstatement
7 or other injunctive relief, and that such a remedy is not
8 appropriate in this case because Senga is still employed in a
9 management position with FedEx, and because Senga denies any
10 interpersonal difficulties with FedEx personnel. See Senga dep.
11 51:10-54:16.

12   "An award of front pay is made in lieu of reinstatement when
13 the antagonism between employer and employee is so great that
14 reinstatement is not appropriate." Fadhl v. City and County of San
15 Francisco, 741 F.2d 1163, 1167 (9th Cir. 1984), *overruled on other*
16 *grounds,* Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also
17 Thorne v. City of El Segundo, 802 F.2d 1131, 1137 (9th Cir. 1986).
18 FedEx argues that because Senga testified that there is no
19 antagonism here, front pay is not an appropriate remedy.

20   In response, Senga argues that his claim for front pay is
21 viable because he can recover "the difference between what he would
22 have received had he been promoted, and what he is making [now], as
23 such wage loss will continue into the future." Plaintiff's
24 Response, p. 14-15. Senga admits that "the issue of how to
25 characterize such damages is murky," but argues that "irrespective
26 of the label, the appropriate remedy under the "retroactive
27
28 Findings and Recommendation Page 12

seniority doctrine," which allows the court in denial of merit based raises to have the plaintiff "deemed promoted" with retroactive seniority, is front pay. Senga cites Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398-99 (1982) as legal authority for this position.

I conclude that a ruling on front pay at this time would be premature, and recommend that the motion for partial summary judgment on Senga's entitlement to front pay be denied with leave to renew the motion before the trial judge.

II. Request for Judicial Notice

Senga requests that the court take judicial notice of an excerpt from the Rutter Group treatise, *Federal Employment Litigation*, page 11-7, §§ 11:62-64, because the treatise cites the Zipes case in a manner he feels is supportive of his argument that Senga was entitled to a promotion, or "job skipping," (i.e., skipping over lines of progression within the work force) as a remedy for past discrimination. Because this motion goes to the issue of front pay, which is deferred for a ruling by the trial court, I recommend that this motion be denied.

III. Motion to Strike

FedEx moves to strike portions of the declarations submitted by Eric and Victoria Senga.

Victoria Senga

The court has not relied on Victoria Senga's declaration for any of its rulings herein. The motion is therefore denied as moot.

Eric Senga

Findings and Recommendation Page 13

FedEx moves to strike paragraph 59 of Eric Senga's declaration. The court has not relied on this portion of the declaration for any of its rulings herein. The motion is denied as moot.

Relevance Objections

FedEx moves to strike paragraphs 5-7 as immaterial because they provide only biographical information. The motion is denied. FedEx moves to strike paragraphs 10-13, 15-16, 31, 79, 81-82, 86-88, 91, 93, and 103 as immaterial because they relate to Senga's performance appraisals and awards over the past six years, because while Senga has alleged that his 2006 and 2007 performance appraisals were retaliatory, FedEx has not moved for summary judgment against that claim. The motion is denied.

FedEx moves to strike paragraphs 25-30, and 32-44 because they relate to positions in Las Vegas, Seattle, and Phoenix that were filled before Senga engaged in any protected activity, and therefore do not form the basis for any claim in this lawsuit. FedEx moves to strike paragraphs 62, 64, 65 and 66, which relate to the Phoenix SCM position and paragraph 63, which relates to the Assistant SCM position in Denver, because Senga admits he did not apply for these positions. FedEx moves to strike paragraphs 74 and 75 because plaintiff's conversations with Larry Wollert do not relate to positions that are at issue in this motion. The court has not relied on these portions of Eric Senga's declaration for its recommendations herein, but even considering this evidence does not advance Senga's case. The motions are therefore denied as moot.

Findings and Recommendation Page 14

<u>Conclusory</u>

FedEx moves to strike as conclusory the statement in paragraph 24 that "In the summer of 2005, I began to perceive that my upward track in the company was being hindered." The motion to strike is denied.

<u>Hearsay</u>

FedEx moves to strike as hearsay paragraphs 17, 25, 29, 30, 35, 63 (second and third sentences), 64, and 77. The motion is granted.

<u>Improper Foundation</u>

FedEx moves to strike paragraph 22 because the declaration states, "On January 31, 2005, I sent an email to Bill Cherry [Exhibit G, Senga 091,]" when Exhibit G actually shows an email between Senga and Mike Zanolli on December 15, 2006.

FedEx moves to strike paragraph 27 because the cited exhibit, Exhibit H, is not what Senga says it is. Senga claims it is the company's written policy requiring all jobs to be posted, but the document actually states only that each internal candidate must be tracked.

FedEx moves to strike paragraph 67 because the cited exhibit, Exhibit Z, is Senga's own statement submitted to the EEOC, and does not support Senga's assertion that this exhibit represents verification in writing from all other managers and supervisors in FedEx's northern region. These motions are granted, with the exception of Exhibit Z itself.

///

Findings and Recommendation Page 15

**Conclusion**

I recommend that FedEx's motion for partial summary judgment (doc. # 34) be GRANTED in part and DENIED in part. I recommend that Senga's motion for judicial notice (doc. # 60) be DENIED. I recommend that FedEx's motion to strike be GRANTED in part and DENIED in part.

**Scheduling Order**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 5, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due March 19, 2009, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 18th day of February, 2009.

/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

Findings and Recommendation Page 16